UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF RHODE ISLAND


JOYCE MATTOS,                          :
        Plaintiff,                     :
                                       :
     v.                                :          CA 07-235 M
                                       :
MICHAEL J. ASTRUE,                     :
Commissioner,                          :
Social Security Administration,        :
        Defendant.                     :


                       **MEMORANDUM AND ORDER**

     This matter is before the Court on a request for judicial review of the decision of the Commissioner of Social Security ("the Commissioner"), denying Supplemental Security Income ("SSI"), under § 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g) ("the Act").  Plaintiff Joyce Mattos ("Plaintiff" or "Ms. Mattos") has filed a motion to reverse the decision of the Commissioner and seeks to have the matter remanded for further consideration.  Defendant Michael J. Astrue ("Defendant") has filed a motion for an order affirming the decision of the Commissioner.  With the parties' consent, this case has been referred to a magistrate judge for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c).

                              **Discussion**

     In a remarkable change of position, Plaintiff, who previously argued to the Commissioner that the report of consulting psychiatrist Stephen DiZio, M.D. ("Dr. DiZio"), "appears to have little probative value ...," (Record ("R.") at 160), now seeks reversal of the Commissioner's decision on the ground that the Administrative Law Judge ("ALJ") allegedly either ignored, overlooked, or dismissed without justification Dr.

DiZio's opinion that Plaintiff had an impairment in her ability to concentrate,[1] see Plaintiff's Memorandum in Support of Her Motion to Reverse the Decision of the Commissioner ("Plaintiff's Mem.") at 12.  Focusing essentially on a single checkmark which appears in a preprinted form attached to Dr. DiZio's three-page singled-spaced typewritten report, Plaintiff argues that she has an impairment in concentration and that the ALJ failed to include this non-exertional limitation in his residual functional capacity ("RFC") findings.  See id.  As a result, according to Plaintiff, the ALJ's finding that Plaintiff's limitations do not prevent her from performing her past relevant work as a secretary, (R. at 32), is not supported by substantial evidence.  In support of her argument, Plaintiff notes that the vocational experts testified at both hearings that the job of secretary is classified as skilled.  See Plaintiff's Mem. at 11 (citing R. at 55, 88).  Plaintiff further asserts that there is no "other evidence in the record to support a finding that a person with only a fair ability to maintain attention and concentration for

---

[1] Plaintiff's present counsel is not the same attorney who previously disparaged Dr. DiZio's report.  While a plaintiff is, of course, free to change attorneys, she should not expect that changes in position regarding the evidence in the record (and the significance of that evidence) will go unnoticed.  Although the Court finds no error in the ALJ's consideration of Dr. DiZio's opinion, if the ALJ had in fact erred, the record would support a finding that Plaintiff misdirected the ALJ with respect to what evidence she contended supported her claim and what evidence should be addressed by the ALJ in his decision.  The Court views such action as akin to (if not worse) than sandbagging.  Cf. Pearson v. Fair, 808 F.2d 163, 166 (1st Cir. 1986)("[A] party cannot sit silently by, await the entry of judgment, and only then (having seen the result and having been disappointed thereby) bemoan the court's failure to take evidence."); Pike v. Caldera, 188 F.R.D. 519, 532 n.23 (S.D. Ind. 1999) ("[S]andbagging is defined as a party intentionally withholding its best evidence and/or argument until the opposing party does not have an adequate opportunity to respond.").

extended periods can perform skilled work such as secretarial work." Id.

The Court finds Plaintiff's argument unpersuasive.  To begin with, the ALJ did not ignore or overlook Dr. DiZio's report.  He devoted a full paragraph of his decision to it, (R. at 29-30), and referenced it again in finding that Plaintiff did not have a severe mental disorder, (R. at 30-31).  In discussing the report, the ALJ recounted what Plaintiff had reported to Dr. DiZio regarding her complaints, medical history, medications, and activities.  (R. at 29)  The ALJ then fairly stated the results of Dr. DiZio's mental status examination, namely that "she felt some depression due to chronic pain, but denied any complaints of other emotional difficulties."[2]  (Id.)  The ALJ also accurately recited Dr. DiZio's diagnosis, namely "adjustment disorder with depressed mood[,] responding well to counseling."  (R. at 30); see also (R. at 284)(diagnosing Plaintiff with "[a]djustment disorder with depressed mood, currently responding well to psycho-therapeutic intervention").

Most significant for purposes of resolving the instant claim of error is the fact that the ALJ correctly stated Dr. DiZio's finding that there is "no evidence of psychiatric impairments in the ability to make occupational adjustments ...."  (R. at 30)  Indeed, as evidenced by the excerpts reproduced below, Dr. DiZio's report was quite positive:

    PROGNOSIS:

---

[2] Dr. DiZio states in his report: "She had no current complaints of emotional difficulties but did admit to being depressed and upset over the chronic pain with the anxiety and depression being further exacerbated this past summer when she was also diagnosed with skin cancer."  (R. at 284)  As explained elsewhere in the record, Plaintiff did not have skin cancer, (R. at 599), although she made this statement to various medical personnel.

> The patient is making a good recovery with respect to her psychological difficulties. She seems to be adjusting well to her medical conditions. Prognosis regarding her emotional state would be, generally, positive.
>
> FUNCTIONAL LIMITATIONS:
> The patient did not report limitations of a psychiatric or emotional nature. She said that she was limited only by her physical difficulties. **There is no evidence of any psychiatric impairment in occupational adjustments.** Personal and social adjustments were not impaired, other than for social activities that may be limited by her physical condition. Daily activities are restricted by her physical condition and not her current emotional state. There is no deterioration in personal habits. There is no constriction of interest. She is able to manage her own funds.

(R. at 284)(bold added).

In finding that Plaintiff did not have a severe mental impairment, the ALJ cited Dr. DiZio's report and stated that it "reflected only a mild adjustment disorder which did not impact on the claimant's ability to function in the personal and social areas, and did not affect her ability to concentrate." (R. at 30-31) Plaintiff contends that this misstates Dr. DiZio's opinion. The basis for her contention is twofold. First, Plaintiff cites a statement in the body of the report that "[t]he patient reports that, for the most part, she is able to concentrate; although, concentration is sometimes interrupted with flare-ups of back and leg pain." (R. at 283) Second, she points to the checkmark on the form indicating that Plaintiff's ability to maintain attention and concentration was "[f]air," (R. at 285), which the form defined as being able to "perform the activity satisfactorily some of the time," (id.).

With respect to the first statement, it does not conflict to a significant degree with the ALJ's finding that Plaintiff's mild adjustment disorder "did not affect her ability to concentrate." (R. at 31) The qualifying phrase "for the most part," (R. at

4

283), indicates that most of the time Plaintiff did not have concentration problems. While Dr. DiZio indicated that her concentration was "sometimes interrupted with flare-ups of back and leg pain," (id.), he also believed that "she is making a good recovery with respect to her psychological difficulties," (R. at 284), and that the prognosis regarding her emotional state would generally be positive, (id.). It also bears noting that Dr. DiZio's report is dated December 21, 2000, (id.), and that the second hearing before the ALJ occurred on February 8, 2005, (R. at 58), more than five years later. Given Dr. DiZio's positive prognosis, there was no reason for the ALJ to conclude that Plaintiff's ability to concentrate had deteriorated in the intervening five years.[3]

As for the checkmark, to the extent that it indicates that Plaintiff has a significant impairment in concentration, the checkmark is at odds with Dr. DiZio's written report. The Court notes that the form asks what medical/clinical findings support the assessment, (R. at 285), and Dr. DiZio wrote: "See narrative report," (id.). Thus, Dr. DiZio directs the reader of the form to his report for further information about the assessment. As already noted above, the report states without qualification that Plaintiff does not have any functional limitations of a psychiatric or emotional nature. (R. at 284) To the extent that there was a conflict between the form and the narrative report,

---

[3] To the extent Plaintiff may contend that her testimony at the second hearing reflects a worsening of her physical condition and that such worsening would increase the "flare-ups of back and leg pain," (R. at 283), and increase the frequency of episodes of impaired concentration, the ALJ found Plaintiff's testimony to be less than fully credible, (R. at 31). The ALJ's reasons for this finding are persuasive and supported by the record. (R. at 30-32) The contention that Plaintiff's concentration is impaired to the extent that she is unable to perform her past work as a secretary is not supported by the full record.

the ALJ was entitled to resolve that conflict in the evidence. See Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991)("[T]he resolution of conflicts in the evidence is for the [Commissioner], not the courts."). Indeed, this Court would resolve the conflict in the same way which the ALJ presumably did, i.e., by relying on the doctor's narrative report and not a checkmark which was not supported by the narrative. See Berrios-Lopez v. Sec'y of Health & Human Servs., 951 F.2d 427, 431 (1st Cir. 1991)(noting that reports containing the mere checking of boxes are entitled to relatively little weight).

This case was resolved at Step 4 of the sequential process, (R. at 32), and it was Plaintiff's burden of showing that she could not perform her past work as a secretary. Plaintiff claims that she met this burden because of the vocational experts' testimony that being a secretary was skilled work and the checkmark which indicates that she could only maintain attention and concentration "some of the time." Plaintiff's Mem. at 12 (presumably quoting R. at 285). The Court disagrees. Plaintiff was represented by counsel at the hearing. (R. at 58) Although counsel asked a question of Plaintiff regarding the physical exertion required in her past work as a secretary, (R. at 87), he asked no questions regarding the concentration or other mental requirements needed for that job. There was nothing in his presentation to alert the ALJ to Plaintiff's present contention that she lacked the mental capacity to perform the job of secretary.

In short, Plaintiff's claim of error is rejected because, taken as a whole, Dr. DiZio's report does not support Plaintiff's contention that her concentration was impaired to the extent that she could not perform her past relevant work as a secretary. The overall opinion expressed by Dr. DiZio is that Plaintiff did not

have any mental impairments which affected her ability to work. Accordingly, the ALJ did not err at step four of the evaluation process. His finding that Plaintiff could perform her past relevant work as a secretary is supported by substantial evidence and is free of legal error. See Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 144 (1st Cir. 1987)("We must affirm the [Commissioner's] [determination], even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence.")(second alteration in original).

Plaintiff's second claim of error is directed towards the ALJ's finding that Plaintiff did not have a severe mental disorder. (R. at 31) Plaintiff contends that the ALJ failed to document his evaluation of her adjustment disorder and depressed mood under the special technique described in 20 C.F.R. § 416.920a when finding that she had no severe mental impairments.[4]

Plaintiff never alleged a mental impairment in her applications. (R. at 122, 149, 155, 343) She did not offer any testimony regarding a mental impairment at the administrative hearings. (R. at 42-53, 61-72); cf. Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 8 (1st Cir. 1982)(finding that substantial evidence supported ALJ's finding that plaintiff did

---

[4] 20 C.F.R. § 416.920a provides in relevant part:

(e) *Documenting application of the technique.* At the initial and reconsideration levels of the administrative review process, we will complete a standard document to record how we applied the technique. At the administrative law judge hearing and Appeals Council levels (in cases in which the Appeals Council issues a decision), and at the Federal reviewing official, administrative law judge, and the Decision Review Board levels in claims adjudicated under the procedures in part 405 of this chapter, we will document application of the technique in the decision.

20 C.F.R. § 416.920a(e) (2008).

not have a severe mental impairment where, *inter alia*, he did not list any mental problem when first applying for disability). Even Dr. DiZio's checkmark on the form is not evidence of a severe mental impairment as his report makes clear that Plaintiff's limited ability to concentrate was the result of her back pain. (R. at 283) His report also makes clear that Plaintiff's mild adjustment disorder with depressed mood had no impact on her ability to maintain concentration with respect to occupational adjustments. (R. at 284)

The Commissioner argues, and the Court agrees, that while the ALJ may not have explicitly set forth findings on each of the four criteria contained in 20 C.F.R. § 416.920a(c)(3),[5] his decision indicates that he adequately considered them in light of the evidence in the record. The Court further agrees that any failure to document application of the special technique by the ALJ in this case was harmless error. In reaching this conclusion, the Court adopts the following portion of the Commissioner's memorandum:

> In this case, the ALJ found that Plaintiff retained the RFC to perform her past relevant work as a secretary (Tr. 32), described by the vocational expert as skilled work (Tr. 88), which requires dealing with people, facts, figures, or abstract ideas at a high level of complexity. See 20 C.F.R. § 416.968(c). While the ALJ made that finding relative to Plaintiff's RFC, that finding was sufficient to provide the required rating in the area of concentration, persistence, or pace. See Arruda [v. Barnhart], 314 F. Supp. 2d, [52,] 79 [(D. Mass. 2004)]("Although discussed in connection with Arruda's residual functional capacity, the findings provide the necessary ratings for the functional areas of social activities and concentration, persistence or pace.") (internal citations omitted). See also Querido [v.

---

[5] The four criteria are activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 20 C.F.R. § 416.920a(c)(3).

Barnhart], 344 F. Supp. 2d, [236], at 251-252 [(D. Mass. 2004)](same).

Further, the ALJ's determination relative to that limitation is supported by Dr. Das' finding that Plaintiff's attention and concentration were normal (Tr. 531); Dr. Gonzalez's finding that she had no limitations in the ability to maintain attention and concentration (Tr. 183, 558); the Commissioner's observation that she had no problems with concentration (Tr. 133, 351); her reports that she had no problems with concentration (Tr. 145); Dr. DiZio's finding that she had no deficits in cognition (Tr. 284); and Newport Hospital's repeated finding that she had no cognitive limitations (Tr. 234, 235, 435, 465).

Also, with respect to concentration, persistence, or pace, Plaintiff reported that she could perform chores (Tr. 144, 148, 255, 283, 364), read (Tr. 67, 144, 283, 364, 504), watch television (Tr. 67, 144, 148, 364, 504), use a computer (Tr. 498, 504), shop (Tr. 148, 362), and prepare meals (Tr. 67, 143, 363). Moreover, with respect to social functioning, Plaintiff got along with others (Tr. 145, 364), went out socially (Tr. 145), and visited with friends and family (Tr. 145, 148, 364).

Additionally, there is no evidence in the record to indicate that Plaintiff had any significant mental limitations in performing daily activities or that she experienced any episodes of decompensation. In regards to daily activities, Plaintiff stated that she did chores (Tr. 144, 148, 255, 283, 364), read (Tr. 67, 144, 283, 364, 504), watched television (Tr. 67, 144, 148, 364, 504), used a computer (Tr. 498, 504), shopped (Tr. 148, 362), prepared meals (Tr. 67, 143, 363), cared for her personal needs (Tr. 143, 363, 500), went for walks (Tr. 67, 283), and listened to the radio (Tr. 148, 283). As to episodes of decompensation, the evidence of record establishes that Plaintiff did not suffer any such episodes, as she did not take medication or undergo treatment for a mental impairment, as noted by the ALJ (Tr. 31) and Plaintiff herself (Tr. 182, 557).

Thus, the evidence of record establishes that Plaintiff had no more than mild limitations in activities of daily living, social functioning, and concentration, persistence or pace, and no episodes of decompensation, which is consistent with a finding of no severe mental

>    impairments.  See 20 C.F.R. § 416.920a(d)(1). It is
>    Plaintiff's burden to show that her mental impairments
>    were severe. See Dudley v. Secretary of Health & Human
>    Servs., 816 F.2d 792, 793 (1st Cir. 1987). However, she
>    has failed to do so, as the record contains no evidence
>    that is inconsistent with the ALJ's step-two finding.
>    The ALJ adequately evaluated Plaintiff's mental
>    impairments and, while his evaluation might have tracked
>    the regulations in a more precise fashion, remand is not
>    warranted, as the evidence of record establishes that
>    her mental impairments were not severe. See Swan v.
>    Barnhart, No. 03-130-B-W, 2004 WL 1529270, at *7 (D. Me.
>    Apr. 30, 2004)(while ALJ failed to assess 20 C.F.R.
>    section 416.920a(c)(3) factors, remand was not
>    appropriate, as evidence of record established that
>    claimant's mental impairment was not severe).

Defendant's Memorandum of Law in Support of Motion for an Order Affirming the Decision of the Commissioner at 14-16. Accordingly, Plaintiff's second claim of error is rejected.

## Conclusion

The ALJ's determination that Plaintiff was not disabled within the meaning of the Act, as amended, is supported by substantial evidence in the record, and is free of legal error. Accordingly, I order that Defendant's Motion for an Order Affirming the Decision of the Commissioner (Doc. #9) be granted and that Plaintiff's Motion to Reverse the Decision of the Commissioner (Doc. #8) be denied.


/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
March 31, 2009